**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

INTERNATIONAL PAINTERS AND   *
ALLIED TRADES INDUSTRY
PENSION FUND, *et al.*,   *

     *Plaintiffs,*   *

     v.   *     CIVIL NO. RDB-23-3239

UNION GROUP, LTD., *et al.,*   *

     *Defendants.*   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This action arises from collective bargaining agreements subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs International Painters and Allied Trades Industry Pension Fund ("Pension Fund"), International Painters and Allied Trades Annuity Plan ("Annuity Plan"), Finishing Trades Institute (collectively, "ERISA Plaintiffs"), and Daniel R. Williams,[1] as Trustee of Pension Fund and Annuity Plan (collectively, "Plaintiffs"), filed this action in a three-count Complaint against Defendants Union Group Limited ("Union Group"), Specialty Groups, Inc. ("Specialty Groups") (collectively, "Signatory Entity Defendants"),[2] and James H. Herron[3]

---

[1] The Complaint also twice makes reference to an individual identified solely as "Nelson." *See* (ECF No. 1 ¶¶ 4, 5). Nelson is not captioned in the Plaintiffs' Complaint (ECF No. 1), however, and the Court thus does not identify him as a Plaintiff.

[2] As detailed further below, the parties dispute the degree to which Specialty Groups is bound by the Bargaining Agreement at issue in this litigation. For clarity and consistency, the Court adopts the naming conventions Plaintiffs use in their Complaint to refer to Defendants. This adoption does not reflect any determination regarding the status of Specialty Groups.

[3] Herron is alleged to be President and Director of Signatory Entity Defendants. (ECF No. 1 ¶ 29.) In his Answer, Herron admitted that he is President of Signatory Entity Defendants. (ECF No. 23 ¶ 19.)

("Herron"), (collectively "Defendants").  *See* (ECF No. 1).  Plaintiffs bring this action on behalf of two labor unions, Political Action Together Fund and the Labor Management Cooperation Initiative (collectively, "Bargained Entities") (collectively with Plaintiffs, "Funds"), that allegedly entered collective bargaining and other labor agreements ("Bargaining Agreement") with Signatory Entity Defendants.  (ECF No. 1.)  Plaintiffs proceed under sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, for various forms of relief related to alleged delinquent contributions to the Funds.  (*Id.*)  Plaintiffs allege jurisdiction against all Defendants under the Labor Management Relations Act, 29 U.S.C. § 185, and ERISA sections 502 and 515.  (*Id.* ¶¶ 10, 11.)  In their Complaint, Plaintiffs allege Audit Compliance Against the Signatory Entities (Count One); Delinquent Contributions Under ERISA and Contract Against the Signatory Entities (Count Two); and Breach of Fiduciary Duty Against Individual Defendant Herron (Count Three).  (*Id.*)

Currently pending before this Court are three Motions filed by Defendants: (1) Union Group's Motion for Partial Judgment on the Pleadings (ECF No. 31) ("Union Group's Motion"); (2) Herron's Motion for Judgment on the Pleadings and for Attorney Fees and Costs (ECF No. 33) ("Herron's Motion"); and (3) Specialty Groups' Motion to Dismiss for Lack of Jurisdiction (ECF No. 36) ("Specialty Groups' Motion") (collectively "Defendants' Motions").  Plaintiffs have responded in Opposition (ECF Nos. 41, 42, 43, respectively) to each Motion, and each Defendant has replied.  *See* (ECF No. 45 (Union Group); ECF No. 46 (Herron); ECF No. 48 (Specialty Groups).)  The parties' submissions have been reviewed and no hearing is necessary.  Loc. R. 105.6 (D. Md. 2023).  For the reasons that follow, Union

2

Group's Motion (ECF No. 31) is DENIED; Herron's Motion (ECF No. 33) is DENIED; and Specialty Groups' Motion (ECF No. 36) is DENIED.

## BACKGROUND

In ruling on a Motion for judgment on the pleadings pursuant to Rule 12(c), this Court must "accept as true all well-pleaded allegations in the plaintiff[s'] complaint" and draw all inferences to favor the nonmoving party. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016). Except where indicated otherwise, the following facts are derived from Plaintiffs' Complaint (ECF No. 1) and accepted as true for the purpose of the Motions for Judgment on the Pleadings filed by Union Group (ECF No. 31) and Herron (ECF No. 33).

Plaintiffs' allegations relate to a Bargaining Agreement that arose between Signatory Entity Defendants and local labor union and district councils affiliated with the International Union of Painters and Allied Trades, AFL CIO, CLC ("Union"). (ECF No. 1 ¶ 15.) Plaintiffs allege that the Bargaining Agreement incorporated the governing documents of the ERISA Plaintiffs ("Trust Agreements") and made them binding on Union Group. (*Id.* ¶ 16.) According to Plaintiffs, the Bargaining Agreement[4] required Union Group make regular payments to the Funds based on the number of hours Union Group's employees worked. (*Id.* ¶ 16.) Payments were due the month after the hours were worked, and any payments not timely made were considered delinquent. (*Id.* ¶ 16.) Plaintiffs allege that the Bargaining

---

[4] Plaintiffs allege that the Trust Agreements are incorporated into the Bargaining Agreement such that it is made binding on Defendants, but Plaintiffs also differentiate between the Trust Agreements and Bargaining Agreement. *See, e.g.*, (ECF No. 1 ¶¶ 16, 17.) For clarity, the Court refers only to the Bargaining Agreement, which the Court construes—consistent with Plaintiffs' allegations—to incorporate the Trust Agreements. *See* (*id.* ¶ 16.)

Agreement required Union Group to pay liquidated damages and interest—accrued from the day payments became delinquent—for each delinquent contribution. (*Id.*)

Additionally, Plaintiffs allege that the Bargaining Agreement required Union Group to maintain and submit records or timecards to the Funds and Union to enable them to determine whether it was making full and prompt payments. (*Id.* ¶ 17.) According to Plaintiffs, if an audit revealed discrepancies between the required and actual payments, the Bargaining Agreement required Union Group to reimburse the Funds and Union for the amounts due, including audit and attorneys' fees. (*Id.*) Plaintiffs allege that Article XV ("Preservation of Work") of the Bargaining Agreement stated that if Union Group "performed onsite construction work of the type covered by this Agreement under its own name, or the name of another," the Bargaining Agreement would govern that work.[5] (*Id.* ¶ 18.) Plaintiffs allege that Article XX ("Successor Clause") of the Bargaining Agreement made it binding on the parties to the Bargaining Agreement and their successors, administrators, executors, and assigns. (*Id.* ¶ 20.) Plaintiffs also allege that Article XXV of the Bargaining Agreement provides its intent "that in the event the Employer's business is, in whole or in part, sold, leased, transferred, or taken over by sale, transfer, lease, assignment, receivership, or bankruptcy proceedings, such business and operation shall continue to be subject to the terms and conditions of this Agreement or the life thereof." (*Id.*)

---

[5] In full, Article XV allegedly provided: if "[e]mployer [i.e., Union Group] performs onsite construction work of the type covered by this Agreement under its own name, or the name of another, as corporation, company, partnership, or other business entity including a joint venture, wherein the employer through its officers, directors, partners, owners or stockholders exercise directly (through family members or otherwise) management, control or majority ownership, the terms and conditions of this [Bargaining] Agreement shall be applicable to such work." (ECF No. 1 ¶ 18.)

Plaintiffs allege that Specialty Group, which did not sign the Bargaining Agreement, is nonetheless bound by its terms for several reasons. First, Plaintiffs allege that Specialty Groups is owned and operated by one or more of the owners or principals of Union Group and performs onsite construction work such that it too is bound by the Bargaining Agreement. (*Id.* ¶ 19.) Next, Plaintiffs allege that Union Group and Specialty Groups constitute a single employer under federal common law because they have interrelated operations, common management, ownership, or control, and centralized control of labor relationships. (*Id.* ¶ 21.) According to Plaintiffs, Signatory Entity Defendants were owned, managed, and controlled by Herron, who was also their registered agent; maintained a principal place of business at the same address in West Virginia; operated the same type of work within the same industry; shared resources, facilities, employees, and jobs; and were used interchangeably such that Specialty Groups took advantage of Union Group's signatory status to gain access to Union jobs. (*Id.* ¶ 20 (a)–(f).) Plaintiffs further allege that Specialty Groups is an employer within the meaning of 29 U.S.C. § 152(2) and ERISA such that it is jointly and severally liable with Union Group for obligations arising under the Bargaining Agreement. (*Id.* ¶ 22.) Finally, Plaintiffs allege that, for many of the same reasons that Signatory Entity Defendants constituted a single employer, Specialty Groups is an alter ego of Union Group under federal common law such that it is jointly and severally liable for any obligations arising under the Bargaining Agreement. (*Id.* ¶¶ 23–24.) Plaintiffs allege that Signatory Entity Defendants exhibited anti-union animus by shifting covered work from a signatory entity to a non-signatory entity. (*Id.* ¶ 23(g).)

Finally, Plaintiffs allege that Herron, as Director and President of Signatory Entity Defendants,[6] caused contributions due the Funds to be withheld and unpaid by (1) having covered work performed by Specialty Groups instead of Union Group, and (2) failing to report fringe benefit contributions due for Specialty Groups' covered work and instead using those funds to pay for operating expenses.  (*Id.* ¶¶ 29, 30.)  Plaintiffs allege that, under Article I of the Trust Agreement, which is incorporated into the Bargaining Agreement, employer contributions become plan assets from the date on which the hours—worked or paid—accrue, and "no Contributing Employer has any right, title, or interest to any sum payable by the Contributing Employer to the Fund." (*Id.* ¶ 27.)  According to Plaintiffs, once Signatory Entity Defendants performed covered work under the Bargaining Agreement, they owed contributions to the Fund.  (*Id.* ¶ 28.)

Accordingly, in Count One of their Complaint, Plaintiffs claim Audit Compliance against Signatory Entity Defendants and allege that Signatory Entity Defendants failed to comply with an audit of their payroll records for the period between January 1, 2017, and the date of inspection in violation of their contractual duty under the Bargaining Agreement and their statutory duty under ERISA.[7]  (*Id.* ¶ 31.)  In Count Two, Plaintiffs allege delinquent contributions under ERISA section 515, 29 U.S.C. § 1145, and the Bargaining Agreement against the Signatory Entities based on their allegation that an audit for the relevant period will show that Signatory Entity Defendants failed to remit required contributions for work covered

---

[6]  As noted above, in Herron's Answer, he only admitted to being President of Signatory Entity Defendants. (ECF No. 23 ¶ 19.)  In his Declaration attached to Specialty Groups' Motion, however, he describes himself as "the founder, sole shareholder, and sole director" of Signatory Entity Defendants.  (ECF No. 36-1 at ¶ 1.)

[7]  Due to this alleged violation, Plaintiffs assert that the most current amount due from Signatory Entity Defendants to Plaintiffs will be ascertained at the time of judgment.  (ECF No. 1 ¶ 26.)

under ERISA section 515, 29 U.S.C. § 1145. (*Id.* ¶¶ 34–37.) Plaintiffs allege that, under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, the Signatory Entity Defendants owe them delinquent contributions, liquidated damages, and attorneys' fees and costs. (*Id.* ¶ 38.)

Finally, in Count Three, Plaintiffs allege Breach of Fiduciary Duty to the Funds against Herron based on his alleged failure to report or pay fringe benefit and other required contributions. (*Id.* ¶¶ 44–48.) Plaintiffs allege that Herron was a fiduciary because he personally exercised authority over the withholding, management, or disposition of plan assets in the form of contributions due. (*Id.* ¶ 49.) Accordingly, Plaintiffs allege in Count Three that Herron is personally liable for injuries caused by the diversion or nonpayment of Fund assets and by his failure to satisfy his fiduciary obligations to the Fund. (*Id.* ¶¶ 50–53.) Plaintiffs request various forms of relief, including a declaration that Specialty Groups is bound by the Bargaining Agreement, an award of liquidated damages, an order enjoining Signatory Entity Defendants from violating the terms of ERISA and the Bargaining Agreement, and an order that Signatory Entity Defendants present for audit, among other relief. (*Id.* at 15–17.)

Plaintiffs filed their Complaint in this Court on November 29, 2023, and Defendants each filed separate Answers on February 15, 2024. (ECF Nos. 23, 25, 25.) On July 30, 2024, Union Group and Herron filed their respective Motions for Judgment on the Pleadings (ECF Nos. 31, 33). On August 9, 2024, Specialty Groups filed a Motion to Dismiss for Lack of Jurisdiction (ECF No. 36). This matter is now ripe for review.

## STANDARD OF REVIEW

### I.     Judgment on the Pleadings

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss." *Bass v. Weinstein Mgmt. Co.*, 56 F.4th 355, 360 (4th Cir. 2022) (*citing Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "To survive a motion to dismiss, the complaint's factual allegations must be enough to raise a right to relief above the speculative level—that is, the complaint must contain enough facts to state a claim for relief that is plausible on its face." *Bass*, 56 F.4th at 360–61 (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). In reviewing a motion pursuant to Rule 12(c), a court must "accept as true all well-pleaded allegations in the plaintiff's complaint" and draw all reasonable factual inferences to favor the nonmoving party. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016). A court may consider the pleadings—including written instruments attached to those filings—and authentic documents integral to the complaint. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

A Rule 12(c) motion "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *CentraArchy Rest. Mgmt. Co. v. Angelo*, 806 F. App'x 176, 177 (4th Cir. 2020). Magistrate Judge Copperthite of this Court has explained that "[a] Rule 12(c) motion is appropriate when all material allegations of fact are admitted in the pleadings and only questions of law remain." *Puchmelter v. SK Weston & Co., LLC*, 1:20-cv-309-ADC, 2020 WL 4903754, at *2 (D. Md. Aug. 20, 2020) (quoting *Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 805 F. Supp. 2d 213, 216 (E.D. Va. 2011) *aff'd* 494 F. App'x 394 (4th Cir. 2012)). Therefore, as Judge Xinis of this Court has expressed, a Rule 12(c) motion may be granted where "no genuine issues of material fact remain and the

8

case can be decided as a matter of law." *Moore v. RealPage Util. Mgmt. Inc.*, 8:20-cv-927-PX, 2023 WL 2599571, at *1 (D. Md. Mar. 22, 2023).

## II.    Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In determining whether jurisdiction exists, the district court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## ANALYSIS

Each of the motions currently pending before this Court relate to a different Defendant. The Court addresses each Defendant's Motion in turn.

I.        Union Group's Motion (ECF No. 31)

In its Motion for Partial Judgment on the Pleadings (ECF No. 31), Union Group contends that it is entitled to judgment on the pleadings as to Plaintiffs' Count One.  (*Id.* at 2–3.)  Specifically, Union Group argues that, as this Court recognized in *International Painters and Allied Trade Industries Pension Fund v. Apostolos Group, Inc.*, Civ. No. GLR-23-440, 2024 WL 916304 (D. Md. Mar. 4, 2024), audit compliance is an equitable remedy available under ERISA but not an independent cause of action.  (*Id.*)  Union Group argues that Plaintiffs cannot reconstrue the language of their Complaint in later filings, and the Court should dismiss Count One with prejudice.  (ECF No. 45 at 2–3.)  In Opposition (ECF No. 41), Plaintiffs contend that Count One is distinct from the claim at issue in *Apostolos Group*[8] because it alleges a claim for breach of contractual or statutory obligations.  (*Id.* at 14, 17–24.)  Plaintiffs argue that there is no demand or request for an audit anywhere in Count One, and such a demand appears only in their prayer for relief.  (*Id.* at 14–15.)  Moreover, Plaintiffs assert that regardless of the outcome of Union Group's Motion, an audit is still an appropriate remedy available to Plaintiffs.  (*Id.* at 25.)  Finally, Plaintiffs contend that dismissal with prejudice is inappropriate because there is nothing to suggest that amendment would be futile.  (*Id.* at 26.)

As Judge Russell of this Court explained in *Apostolos Group*, "ERISA authorizes courts to grant 'such other legal or equitable relief as the court deems appropriate' in delinquent contribution cases."  *Apostolos Grp.*, 2024 WL 916304, at *4 (quoting 29 U.S.C. § 1132(g)(2)(E)).  Such equitable remedies include injunctive relief requiring defendants to submit to an audit.

---

[8] Plaintiff refers to *Apostolos Group* as *Thomarios*, but appears to be referencing the same case as Union Group. *See, e.g.*, (ECF No. 41 at 11).  For clarity, the Court refers to the case as *International Painters and Allied Trade Industries Pension Fund v. Apostolos Group, Inc.*

29 U.S.C. § 1132(g); *see also id.* (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass*, 635 F. Supp. 2d 21, 26 (D.D.C. 2009)).  As Judge Chuang of this Court has recognized, injunctive relief is a remedy, not an independent cause of action.  *Simone v. VSL Pharms., Inc.*, Civ. No. TDC-15-1356, 2017 WL 66323, at *10 (D. Md. Jan. 5, 2017) ("Where, as here, injunctive relief is included in the request for relief, there is no reason to allow these duplicative requests to proceed in the improper guise of independent causes of action."); *see also Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001) ("[A] request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the nine substantive counts."); *Apostolos Grp.*, 2024 WL 916304, at *4 ("To the extent that Plaintiffs assert injunctive relief as a separate cause of action, [Defendant's] Motion to Dismiss is granted, and that count is dismissed.").[9]  In this case, there is no dispute that Count One relates to an audit, or that an audit is a form of equitable relief contemplated in ERISA.

At bottom, the parties dispute the scope of Plaintiffs' allegations in Count One.  The viability of Count One as an independent cause of action depends on whether Plaintiffs allege (1) that ERISA and the Bargaining Agreement require compliance with periodic payroll audits regardless of any assertion of delinquent contributions such that Union Group's alleged failure

---

[9] Other courts in the Fourth Circuit have reached the same conclusion. *See Kearney v. Blue Cross & Blue Shield*, 233 F. Supp. 3d 496, 508 (M.D.N.C. 2017) ("It is well settled that a request for injunctive relief is not a cause of action but rather a type of remedy."); *Barnhill v. FirstPoint, Inc.*, 2017 WL 2178439, at *8 (M.D.N.C. May 17, 2017) ("[T]he claim of injunctive relief must be dismissed because it is pleaded as an independent cause of action, rather than a remedy.  This does not preclude Plaintiff from requesting injunctive relief in her Prayer for Relief as she has done."); *Ruiz v. Samuel I. White, P.C.*, 2009 WL 10687930, at *1 n.1 (E.D. Va. Nov. 9, 2009) ("Requests for injunctive relief are not independent causes of action; rather such requests must relate to a specific, cognizable cause of action, and the question of whether injunctive relief will be awarded is only reached in the event that a plaintiff prevails on a claim that provides for injunctive relief."); *Pinnacle Mining Co., LLC v. Bluestone Coal Corp.*, 624 F. Supp. 2d 530, 539 (S.D. W. Va. 2009) ("A request for injunctive relief does not constitute an independent cause of action . . . ." (quoting *Fare Deals*, 180 F. Supp. 2d at 682 n.1)).

to comply with a payroll audit is a breach of contractual and statutory duties, or (2) that Union Group must submit to an audit *because of* the delinquent contributions alleged in Count Two. The former constitutes a cognizable cause of action, but the latter is an impermissible attempt to allege an equitable remedy as an independent cause of action.  *Compare Bd. Of Trs. of Int'l Un. Of Operating Eng'rs Local 825 Pension Fund v. River Front Recycling Aggregate, LLC*, 2016 WL 6804869, at *8 (D.N.J. Nov. 16, 2016) (recognizing audit compliance as cognizable cause of action under ERISA and collective bargaining agreement based on allegations that agreement required payroll audits and defendant failed to comply) *with Apostolos Grp.*, 2024 WL 916304, at *4 (dismissing claim for audit compliance as improper request for equitable remedy).

Construing the facts in the light most favorable to Plaintiffs, Count One appears to allege failure to comply with an audit as a breach of the collective bargaining agreement under ERISA.[10]  Despite its title, "For Audit Compliance Against Signatory Entities," Count One's substantive paragraphs allege that Signatory Entity Defendants "have a contractual duty under the Bargaining Agreement and the Trust Agreements incorporated therein, to permit an audit of their records" and "have a statutory duty to perform all obligations required on their part to be performed under ERISA, 29 U.S.C. §§ 1101–1381, [and] the LMRA, 29 U.S.C. §§ 141–197 . . . ."  (ECF No. 1 ¶¶ 32, 33.)  The thrust of their claim thus appears to be a breach of contractual duty to submit to a payroll audit and an associated breach of statutory duty under

---

[10]  Much of Plaintiffs' Opposition focuses on recasting Count One as a claim for breach of contractual and statutory duties.  Although the Court ultimately concludes that the Plaintiffs' Complaint, construed in the light most favorable to Plaintiffs, alleges such a claim, the Court looks to solely the language in the Complaint and the pleadings, not Plaintiffs' subsequent attempts to reconstrue that language.  *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) ("In resolving a motion pursuant to Rule 12(b)(6) or Rule 12(c), a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." (citing FED. R. CIV. P. 12(d).).

ERISA. Under ERISA, 29 U.S.C. § 1021(k)(1)(I), an administrator of a multiemployer plan is required to "contribute to the plan a copy of— . . . (I) audited financial statements of the plan for any plan year . . . ." *See also id.* § 1132(c)(4) (authorizing Secretary to "assess a civil penalty of not more than $1,000 a day for each violation by any person of subsection . . . (k) . . . of section 1021 of this title . . . ."). Union Group "admits that, at relevant times, it was a signatory to a collective bargaining agreement ("CBA") with a district council affiliated with the Union of Painters and Allied Trades, AGFL CIO, CLC (the "Union"), and that the CBA speaks for itself." (ECF No. 25 ¶¶ 15, 32.). Additionally, as detailed above, Plaintiffs allege that Union Group and Specialty Groups were alter egos operating to avoid making required contributions to the Funds such that Specialty Groups is also bound by the Bargaining Agreement. (ECF No. 1 ¶¶ 23–24.) Accordingly, Plaintiffs' Count One alleges a cognizable claim that Signatory Entity Defendants breached contractual and statutory duties by failing to submit to a payroll audit. To be clear, the Court construes Plaintiffs' Count One to raise a claim *only* of breach of contractual and statutory duties based on Signatory Entity Defendants' alleged failure to comply with a payroll audit, as allegedly required in the Bargaining Agreement under ERISA.[11]

Construed as a claim for breach of contractual and statutory duties, Count One just meets the standard required to survive dismissal under Rule 12(c). In *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corporation*, 920 F.2d 1491, 1494 (9th Cir. 1990), the U.S. Court of Appeals for the Ninth Circuit recognized a cognizable cause of action for audit compliance

---

[11] To the extent that Plaintiffs sought to allege in Count One that an audit is required based on the violations alleged in Count Two, such allegation is not an independent cause of action but a remedy available to Plaintiffs should they prove the allegations in Count Two.

, which the Court construes *only* to raise a claim of breach of contractual and statutory duties by failing to comply with a payroll audit prior to the filing of this action.

because "[t]he Trust Agreement gives the Trustees the right to audit an employer's books and records" and "[t]he Supreme Court has made clear that the trust documents, if consistent with the ERISA statute, govern the scope of the trustees rights and duties." *Id.* at 1494, 1496 (citing *Cent. States, SE & SW Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985)); *see River Front Recycling Aggregate,* 2016 WL 6804869, at *8 (declining to dismiss claim for audit compliance where plaintiffs provided relevant audit provisions of agreements at issue).  In this case, Plaintiffs allege that Signatory Entity Defendants failed to meet their duties to (1) comply with audits under the Bargaining Agreement, and (2) "perform all obligations required on their part to be performed under ERISA." (ECF No. 1 ¶¶ 32, 33.)  Union Group has admitted that (1) it was signatory to a collective bargaining agreement with Plaintiffs, (2) ERISA speaks for itself, and (3) the collective bargaining agreement and Trust Agreement speak for themselves. (ECF No. 23 ¶¶ 15, 20, 22, 29, 32.)  Plaintiffs provide few factual allegations regarding when or how they requested an audit from Signatory Entity Defendants, but their basic description of the Bargaining Agreement and Union Group's admissions establish a claim for relief sufficient to survive this early stage of litigation.

Moreover, Union Group does not challenge the sufficiency of the allegations in Count One, and several factual issues remain as to Count One.  The allegations in Count One depend on the content of the Bargaining Agreement that both parties admit they entered.  Neither party, however, has provided the Bargaining Agreement to the Court.[12]  The parties' failure to provide the Bargaining Agreement that allegedly undergirds the allegations in Count One

---

[12]  In an exhibit attached to Herron's Motion (ECF No. 33), Herron attaches portions of the Collective Bargaining Agreement relating solely to his arguments his Motion.  *See* (ECF No. 33-1.)

creates a factual dispute that precludes judgment on the pleadings. *See Puchmelter v. SK Weston & Co., LLC*, 1:20-cv-309-ADC, 2020 WL 4903754, at *2 (D. Md. Aug. 20, 2020) ("A Rule 12(c) motion for judgment on the pleadings is appropriate when all material allegations of fact are admitted in the pleadings and only questions of law remain." (quoting *Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 805 F. Supp. 2d 213, 216 (E.D. Va. 2011) *aff'd* 494 F. App'x 394 (4th Cir. 2012))). As such, the Court cannot reach any conclusions about the content of the Bargaining Agreement and cannot grant judgment on the pleadings. Union Group's Motion (ECF No. 31) is DENIED without prejudice to the assertion of the same arguments later in this litigation.

## II.    Herron's Motion (ECF No. 33)

Through his Motion for Judgment on the Pleadings (ECF No. 33), Herron argues that he is entitled to judgment on the pleadings and attorneys' fees because, as a matter of law, Plaintiffs cannot show that he was an ERISA fiduciary. (*Id.* at 2, 4–7.) Herron contends that Plaintiffs fail to allege facts that establish that he rendered investment advice or exercised discretionary authority in the management or administration of the Plans or their assets. (*Id.* at 5.) Herron also asserts that Plaintiffs cannot show that he is subject to ERISA section 515 because they cannot show that he meets the definition of "employer." (*Id.* at 7–8.) In Opposition (ECF No. 42), Plaintiffs contend that judgment on the pleadings and attorneys' fees are inappropriate because Herron voluntarily exercised authority and control over plan assets. (*Id.* at 12.) Plaintiffs argue that Herron operated Signatory Entity Defendants as alter egos to avoid the contributions required under the Bargaining Agreement. (*Id.* at 13.) They

contend that Herron diverted plan assets to pay operating expenses and debts owed by Specialty Groups such that he became a de facto ERISA fiduciary.  (*Id.* at 11.)

Under ERISA, an individual or entity can be a "named fiduciary"—that is, explicitly named in the plan instrument—or a de facto fiduciary.  ERISA defines a named fiduciary as "a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary."  29 U.S.C. § 1102(a)(2).  Plaintiffs do not allege that Herron was named fiduciary, and only his status as a de facto fiduciary is at issue in this case. Where a person is not a named fiduciary, he becomes a de facto fiduciary only

> [t]o the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of any such plan.

29 U.S.C. § 1002(21)(A).  The careful wording of this definition emphasizes that discretion is "the linchpin of fiduciary status under ERISA."  *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994).  Thus, as Judge Hollander of this Court has explained, "bald allegations that an officer had discretionary authority or control over the plan assets are insufficient, 'without a proffer of some factual basis for concluding that a given entity possessed such discretionary authority.'"  *Int'l Painters & Allied Trades Indus. Pension Fund v. Clayton B. Obersheimer, Inc.*, Civ. No. ELH-12-1000, 2013 WL 594691, at *7 (D. Md. Feb. 13, 2013) (quoting *In re Mut. Living Fund Litig.*, 403 F. Supp. 2d 434, 445 (D. Md. 2005)).

In this case, Plaintiffs do not allege that Herron was a named fiduciary, rendered investment advice, or administered the Plans, "so the only applicable definition of fiduciary is

one who exercises discretion in 'management or disposition' of a plan or its assets." *Int'l Painters & Allied Trades Indus. Pension Fund v. Apostolos Grp., Inc., LLC*, Civ. No.GLR-23-440, 2024 WL 916304, at *3 (D. Md. Mar. 4, 2024) (quoting 29 U.S.C. § 1002(21)(A)(i)).  The parties' dispute, therefore, centers on (1) whether Plaintiffs sufficiently alleged that unpaid employer contributions are plan assets, and, if so, (2) whether Plaintiffs sufficiently alleged that Herron exercised enough discretion that he become a de facto fiduciary under ERISA.

As to the first matter, Plaintiffs have sufficiently alleged that the unpaid employer contributions in this case are plan assets.  As Magistrate Judge Copperthite of this Court has thoroughly explained, "there is no regulation which specifies when employer contributions to ERISA funds become plan assets," and the U.S. Court of Appeals for the Fourth Circuit has not addressed the issue since it deemed unpaid employer contributions plan assets "when they are 'due and payable to the plan.'" *Acosta v. Calderon*, Civ. No. ADC-16-0964, 2017 WL 4011932, at *5 (D. Md. Sept. 11, 2017) (citing *United States v. Jackson*, 524 F.3d 532, 543 (4th Cir. 2008) *vacated*, 555 U.S. 1163 (2009)).  Even so, the U.S. Courts of Appeals for the Eleventh, Tenth, Sixth, and Second Circuits "have developed a general exception that unpaid employer contributions may be considered plan assets under ERISA *if specifically provided for in the plan agreement*." *Id.* at *6 (emphasis added); *see ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003); *In re Luna*, 406 F.3d 1192, 1200 (10th Cir. 2005); *In re Bucci*, 493 F.3d 635, 642 (6th Cir. 2007); *In re Halpin*, 566 F.3d 286, 290 (2d Cir. 2009).

In this case, the Bargaining Agreement between the parties explicitly established that unpaid employer contributions were plan assets by providing:

> The term "Employer Contributions" shall mean payments made or that are required to be made to the Fund, including amounts owed but not yet paid, by

a Contributing Employer under the provisions of, or in accordance with, a Collective Bargaining Agreement and the Trust Agreement, or with regard to a Local Union or District Council or special classes of employees of a Contributing Employer, payments to the Fund pursuant to and in in accordance with the Rules and Regulations of the Pension Plan and the Annuity Plan. *All such Employer contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contribution Employer is obligated to pay contributions to the Fund accrue, whether or not such Employer Contributions are collected or received by the Fund.*

(ECF No. 33-2, *Section 10* (emphasis added))[13]  Based on this wording—and consistent with federal appellate case law and this Court's repeated recognition that unpaid employer contributions may be plan assets when the governing agreement so provides—Plaintiffs have sufficiently alleged that the express terms of the Bargaining Agreement make unpaid employer contributions plan assets.[14]

The parties' dispute regarding Herron's discretion presents a very close question.  "[A]n ERISA fiduciary is 'any individual who de facto performs specified discretionary functions with respect to the management, assets, or administration of a plan.'"  *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 229 (4th Cir. 2014) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996)).  "[T]he 'management or disposition' language found in ERISA's definition of a fiduciary 'refers to the common transactions in dealing with a pool of assets: selecting

---

[13]  As noted above, Plaintiffs did not attach the Bargaining Agreement to their pleadings, but their Complaint alleges that "[o]nce covered work under the Bargaining Agreement was and is performed by the Signatory Entities, contributions due and owing for covered hours constitute[d] plan assets."  (ECF No. 1 ¶ 28.)  Herron contends, however, that the Bargaining Agreement is incorporated by reference the Complaint and attaches portions of the Bargaining Agreement to his Motion.  (ECF No. 33 at 2.)  When ruling on a Rule 12(c) motion, the Court may consider "[documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  *Occupy Columbia*, 738 F.3d at 116 (alteration in original) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  The Bargaining Agreement is integral to Plaintiffs' Complaint because it gives rise to their claims.

[14]  The Court does not determine whether the alleged unpaid contributions in this case constitute plan assets or not.  The Court's ruling is limited to the conclusion that the Plaintiffs have sufficiently alleged that the Bargaining Agreement states that unpaid employer contributions are plan assets such that judgment on the pleadings is not appropriate on that basis.

investments, exchanging one instrument or assert for another, and so on.'" *Apostolos Grp.*, 2024 WL 916304, at *3 (alteration in original) (quoting *Obersheimer*, 2013 WL 594691, at *7). "[T]he mere discretion whether to pay debts owed to an employee benefit plan . . . does not suffice to confer fiduciary status under ERISA." *Id.* (alteration in original) (quoting *Obersheimer*, 2013 WL 594691, at *7).    As Judges Hollander and Blake of this Court have explained, "corporate officers 'do not become fiduciaries solely by virtue of their corporate position, even if the corporation is a fiduciary, unless it can be shown that they have individual discretionary roles as to plan administration.'" *Obersheimer*, 2013 WL 594691, at *7 (quoting *In re Mut. Funds Inv. Litig.*, 403 F. Supp 2d 434, 447 (D. Md. 2005)).    That is, because ERISA defines fiduciary "in terms of functional control and authority over the plan," courts "examine the conduct at issue when determining whether an individual is an ERISA fiduciary." *Moon*, 577 F. App'x at 229 (quoting *Wilmington Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 343 (4th Cir. 2007)).    Under this analysis, a person may be "liable as a 'de facto' fiduciary' if [he] lacks formal power to control or manage a plan yet exercises informally the requisite 'discretionary control' over plan management and administration.'" *Id.* (quoting *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101–02 (9th Cir. 2004)).

Plaintiffs' allegations in this case are distinct from the cases in which this Court has declined to hold that an employer's failure to ensure contributions are made to an ERISA fund despite responsibility to do so establishes ERISA fiduciary status.  *See Apostolos Grp.*, 2024 WL 916304, at *4; *Int'l Painters & Allied Trades Indus. Pension Fund v. Statesville Painting & Maint., LLC*, JRR-23-2436, at *4 (D. Md. Feb. 26, 2025); *Obersheimer*, 2013 WL 594691, at *8.  In this case, Plaintiffs allege that Herron operated the Signatory Entity Defendants, which share a

principal place of business at Herron's address, as alter egos specifically to avoid making required fringe benefit contributions to the Plans.  (ECF No. 1 ¶¶ 46–53, 6, 7.)  Thus, Plaintiffs allege that Herron manipulated the work performed to avoid making fringe benefit payments, which Plaintiffs sufficiently allege became plan assets once due.  Construing the facts in the light most favorable to Plaintiffs, they sufficiently allege that Herron exercised "discretionary authority or discretionary control respecting management . . . or disposition of [the Plan's] assets . . . ."[15]  29 U.S.C. § 1002(21)(A).

At this early stage of litigation in which the Court must construe the facts in the light most favorable to the nonmoving party, Plaintiffs have alleged facts sufficient to survive Herron's Motion for Judgment on the Pleadings.  Accordingly, Herron's Motion (ECF No. 33) is DENIED without prejudice.[16]  The issue of Herron's status as a de facto fiduciary may be subsequently addressed after a period of discovery in this case.

### III.    Specialty Groups' Motion to Dismiss for Lack of Jurisdiction (ECF No. 36)

In its Motion to Dismiss (ECF No. 36), Specialty Groups argues that this Court lacks subject matter jurisdiction because the parties' dispute involves a representational matter within the exclusive jurisdiction of the National Labor Relations Board ("NLRB").  (*Id.* at 8–

---

[15]  Herron argues that his alleged control over the unpaid fringe benefits amounted to mere "ministerial duties on behalf of the plan" insufficient to make him an ERISA fiduciary under this Court's previous cases and Fourth Circuit authority.  *See* (ECF No. 46 at 6 (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996)); *see, e.g.*, *In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d at 447–48.  Herron also contends that "ERISA fiduciaries 'may wear different hats' and 'have financial interests adverse to beneficiaries.'"  (ECF No. 46 at 7 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).)  Plaintiffs' allegations that Herron specifically sought to avoid required contributions by maneuvering covered work between two Signatory Entity Defendants that he allegedly operated as alter egos, however, distinguishes this case from prior case law.  At this judgment on the pleadings stage, the Court must draw all reasonable inferences to favor Plaintiffs, and judgment for Herron is appropriate only if there are no factual disputes and he is entitled to judgment as a matter of law.  *Bass v. Weintein Mgmt. Co.*, 56 F.4th 355, 360 (4th Cir. 2022).

[16]  Because the Court denies Herron's Motion, it does not address his arguments related to attorneys' fees.

9.)  Specialty Groups contends that interpretation of the parties' Bargaining Agreement depends entirely on whom the union represents such that this court lacks subject matter jurisdiction.  (*Id.* at 10.)  Specialty Groups argues that it informed the Painters Union that its employees were not subject to the Bargaining Agreement and exercising jurisdiction could potentially result in its employees—who never agreed to union membership—being deemed union members.  (*Id.* at 11–12.)  Specialty Groups argues that Plaintiffs' single employer and alter ego theories do not overcome the primarily representational issues in this case.  (*Id.* at 12–17.)  In Opposition (ECF No. 43), Plaintiffs argue that Specialty Groups' Motion is untimely because it was filed several months after Specialty Groups' Answer.  (*Id.* at 7–8.)  Additionally, Plaintiffs emphasize that, as pension funds, they are third-party beneficiaries to contracts between unions and employers, so this action raises no dispute between a union and an employer.[17]  (*Id.* at 19–23, 22 n.10.)  To support this assertion, Plaintiffs rely heavily on *Laborers' District Council Health and Welfare Trust Fund Number 2 v. Comet Contracting, LLC*, 2006 WL 2085847 (D. Md. July 25, 2006), in which Judge Titus of this Court found subject matter jurisdiction where, as here, third-party multi-employer benefit funds sought monetary damages based on a single employer theory.  (ECF No. 43 at 8–13.)

As an initial matter, Specialty Groups' Motion, filed just shy of six months after its Answer (ECF No. 24), is untimely but not barred.  Under Federal Rule of Civil Procedure 12, "[a] motion asserting any of the[ 12(b)] defenses must be made before pleading if a responsive pleading is allowed."  FED. R. CIV. P. 12(b).  Rule 12(h), however, makes clear that the defense

---

[17]  Plaintiffs make various additional arguments in their Opposition.  Because, as further explained below, the Court concludes that there is no representational dispute in this litigation, the Court does not reach those additional arguments.

of lack of subject matter jurisdiction is not waived for failure to raise it in the first pleading, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the action." FED. R. CIV. P. 12(h)(3); *see also In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010) ("Subject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court sua sponte, at any time prior to final judgment."). Accordingly, the Court construes Specialty Groups' untimely Rule 12(b)(1) motion as a motion under Rule 12(h)(3).[18] *See Leonard v. PNC Bank Nat'l Headquarters*, Civ. No. SAG-20-0011, 2020 WL 2731990, at *1 n.2 (D. Md. May 26, 2020); *see also Kontrick v. Ryan*, 540 U.S. 443, 445 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–508, 516 (2006) (reaching defendant's motion to dismiss for lack of jurisdiction under Rule 12(h)(3) even though it was filed after defendant's answer).

Under the National Labor Relations Act of 1935 ("NLRA"), 29 U.S.C. §§ 151–169, the National Labor Relations Board ("NLRB") generally has jurisdiction to decide representational matters related to disputes between labor organizations and employers. *Id.* §§ 157, 159(b). Under the Labor Management Relations Act ("LMRA") section 301(a), however, federal courts and the NLRB share concurrent jurisdiction over actions alleging

---

[18] Courts within the Fourth Circuit appear split regarding whether to construe a motion to dismiss under Rule 12(b)(1) filed after the pleadings have closed as a motion under Rule 12(h)(3) or a motion under Rule 12(c). *Compare Leonard*, 2020 WL 2731990, at *1 n.2 (construing untimely Rule 12(b)(1) motion under Rule 12(h)(3)) *and Perrodin v. United States*, 350 F. Supp. 2d 706, 708 n.1 (D.S.C. 2004) (construing untimely Rule 12(b)(1) motion under Rule 12(h)(3)) *with Humphrey v. Global Equity Lending, Inc.*, 2008 WL 5262769, at *3 (E.D. Va. Dec. 17, 2008) (construing untimely Rule 12(b)(1) motion as a motion under Rule 12(c)). This largely appears to be a procedural distinction without a difference, because the standard of review for a motion to dismiss based on lack of subject matter jurisdiction remains the same under Rules 12(b)(1), 12(c), and 12(h)(3). *See Humphrey*, 2008 WL 5262769, at *3 (discussing standard of review).

"violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). This concurrent jurisdiction extends to actions by pension plans as third-party beneficiaries to collective bargaining agreements under ERISA, as long as the disputes at issue are not "primarily representational." *See* 29 U.S.C. §§ 1132(a)(3)(B); *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988); *see also United Food & Com. Workers Union, Loc. 400 v. Shoppers Food Warehouse Corp.*, 35 F.3d 958, 961 (4th Cir. 1994). As the Fourth Circuit has explained, this "primarily representational" limitation recognizes that Congress intended the NLRB to determine collective bargaining units and prevents an "'end run' around provisions of the NLRA under the guise of contract interpretation." *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Facetglas, Inc.*, 845 F.2d 1250, 1252 (4th Cir. 1988) (quoting *Loc. Union 204, Int'l Bhd. Of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 418–19 (8th Cir. 1982)).

Cases raising "primarily representational" issues typically involve union arbitration disputes or a labor union suing under the LMRA "to enforce its own collective bargaining agreements and either force an employer to deal with the union or to refrain from using a second corporation to hire non-union labor." *Comet*, 2006 WL 2085847, at *7 (first citing *Carpenters Local Union No. 1846 V. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 505 (5th Cir. 1982); and then citing *Walter N. Yoder & Sons, Inc. v. Sheet Metal Workers' Loc. Union 100*, 661 F. Supp. 1141 (D. Md. 1987)). Before federal courts may exercise jurisdiction in such cases, the NLRB must determine the appropriate bargaining unit to prevent a court from circumventing employees' rights under section 7 of the NLRA, 29 U.S.C. § 157, "to bargain collectively with representatives of their own choosing." *Id.* (quoting *Carpenters Loc. Union No. 1846*, 690 F.2d at 507). Otherwise, courts might inappropriately bind employees who never agreed to union

representation in the first instance to a collective bargaining agreement that the union entered. *Id.; see also Walter N. Yoder & Sons*, 661 F. Supp. at 1144 (noting that an improper arbitration award could apply "a union contractor's collective bargaining agreement to a non-union entity and its employees" in violation of section 9(b) of the NLRA, 29 U.S.C. § 159(b)).

No such "primarily representational" issues exist in this case, in which "[t]he question of what constitutes an appropriate bargaining unit is supplanted by the question of which employees and jobs are covered by the contract[s]" underlying the alleged delinquent contributions. *Comet*, 2006 WL 2085847, at *7. The Court need not determine whether Specialty Groups formed part of the collective bargaining unit. The outcome of Plaintiffs' claims depends on whether Herron operated Specialty Groups and Union Group as a single employer or alter ego such that Specialty Groups is liable under the Bargaining Agreement via its relationship with Union Group. Thus, Plaintiffs' claims against Specialty Groups are rooted solely in its status as a single employer or alter ego of Union Group, which is a contractual issue distinct from the determination of a bargaining unit.[19] *See, e.g., Moriarty v. Larry Lewis Funeral Dirs.*, 150 F.3d 773 (7th Cir. 1998); *UA Local 343 United Ass'n of Journeyman & Apprentices of Plumbing & Pipefitting*, 48 F.3d 1465, 1470–71 (9th Cir. 1994). Accordingly, Plaintiffs have met their burden to establish subject matter jurisdiction by a preponderance of the evidence, and Specialty Group's Motion is DENIED.

---

[19] Because the Court determines that Plaintiffs claims raise contractual issues that do not implicate Specialty Groups' status as a member of the bargaining unit or not, the Court does not inquire further into the appropriate bargaining unit.

## CONCLUSION

For the foregoing reasons, Defendants' Motions (ECF Nos. 31, 33, 36) are DENIED.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Dated: March 4th, 2025

25