# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, *et al.*, | * | |
| | * | |
| *Plaintiffs,* | * | |
| v. | * | Civil No. RDB-23-3239 |
| UNION GROUP, LTD., *et al.,* | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This action arises in relation to Collective Bargaining Agreements subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs International Painters and Allied Trades Industry Pension Fund ("Pension Fund"); International Painters and Allied Trades Annuity Plan ("Annuity Plan"); Finishing Trades Institute (collectively, "ERISA Plaintiffs"); and Daniel R. Williams, as Trustee of Pension Fund and Annuity Plan (collectively, "Plaintiffs"), filed this action in a three-count Complaint against Defendants Union Group Limited ("Union Group"); Specialty Groups, Inc. ("Specialty Groups"); and Specialty Groups' President James H. Herron ("Herron"). *See* (ECF No. 1; ECF No. 23 ¶ 19). Plaintiffs allege that Specialty Groups and Union Group failed to comply with audits and make contributions to the ERISA funds as required under Collective Bargaining Agreements, while Herron breached his fiduciary duties under the relevant Agreements. *See generally* (ECF No. 1). After filing Answers, (ECF Nos. 23, 24, 25), to Plaintiffs' Complaint, Union Group filed a Motion for Partial Judgment on the Pleadings (ECF

No. 31) ("Union Group's Motion"), Herron filed a Motion for Judgment on the Pleadings and for Attorneys' Fees and Costs (ECF No. 33) ("Herron's Motion"), and Specialty Groups filed a Motion to Dismiss for Lack of Jurisdiction (ECF No. 36) ("Specialty Groups' Motion to Dismiss"). In its Motion to Dismiss, Specialty Groups argued that there is ambiguity with respect to the definition of "Bargaining Unit" in the Collective Bargaining Agreement, and such ambiguity raises representational issues outside this Court's jurisdiction. Plaintiffs have contended that, regardless of any ambiguity in the Agreements, Specialty Groups is obligated to pay delinquent ERISA contributions because it operates as an alter ego or single employer with Union Group, which is alleged to be a signatory to the Collective Bargaining Agreements.

By Memorandum Opinion and Order dated March 4, 2025, this Court denied each of the Defendants' motions. (ECF Nos. 51, 52.) As to Union Group's Motion (ECF No. 31), the Court denied partial judgment on the pleadings because Plaintiffs stated a cognizable claim that ERISA and the Collective Bargaining Agreements require compliance with periodic payroll audits regardless of any assertion of delinquent contributions. (ECF No. 51 at 11–15.) As to Herron's Motion (ECF No. 33), the Court denied judgment on the pleadings because, although a close question, at this early stage of litigation Plaintiffs sufficiently alleged that (1) unpaid employer contributions are plan assets and (2) Herron exercised sufficient discretion to be a de facto fiduciary under ERISA. (*Id.* at 16–20.) Finally, the Court denied Specialty Groups' Motion to Dismiss (ECF No. 36), because "Plaintiffs' claims against Specialty Groups are rooted solely in its status as a single employer or alter ego of Union Group, which is a contractual issue distinct from the determination of a bargaining unit." (*Id.*

at 24.)    Resolution of the claims against Specialty Groups, therefore, does not raise representational issues beyond this Court's jurisdiction.  (*Id.*)

Presently pending before this Court is Specialty Groups' untimely Motion for Reconsideration of Order Denying its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, to Certify Order for Interlocutory Appeal (ECF No. 55) ("Specialty Groups' Motion").  Under Federal Rule of Civil Procedure 54(b), Specialty Groups seeks reconsideration of this Court's Memorandum Opinion (ECF No. 51) and Order (ECF No. 52) denying its untimely Motion to Dismiss (ECF No. 36).  Alternatively, it seeks certification for interlocutory appeal of "[w]hether ERISA §§ 402, 414, and 515; [West Virginia Code] §§ 21-1A-3 and 21-5G-2 (collectively, 'West Virginia's Right-to-Work Laws'); and *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) preclude district courts from applying federal common law to bind a non-union shop to an ambiguous collective bargaining agreement ('CBA')?"  (ECF No. 55 at 2.)  Plaintiffs have responded in Opposition (ECF No. 58), and Specialty Groups has replied (ECF No. 61).  By consent of the parties, this Court entered a stay pending resolution of Specialty Groups' Motion.  *See* (ECF No. 54).  The parties' submissions have been reviewed, and no hearing is necessary.  Loc. R. 105.6 (D. Md. 2025).  For the reasons that follow, Specialty Groups' Motion (ECF No. 55) is DENIED, and the stay in this matter is LIFTED.

## BACKGROUND

The facts of this case are described in detail in this Court's prior Memorandum Opinion (ECF No. 51) and need not be repeated in full.  *See* (ECF No. 51 at 3–7).  As relevant to the instant Motion, Plaintiffs are multiemployer benefit plans or funds, employee benefit plans,

and their trustee who sue Specialty Groups under ERISA §§ 502 and 515, 29 U.S.C. §§ 1132, 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for audit compliance and delinquent contributions pursuant to allegedly applicable Collective Bargaining Agreements.  *See* (ECF No. 1 at 11–12).  Defendants Union Group and Specialty Groups are employers incorporated in West Virginia that allegedly fall within the definition of employer under ERISA § 3(5), 29 U.S.C. § 1002(5), and the National Labor Relations Act § 2(2), 29 U.S.C. § 152.  (ECF No. 1 ¶ 6–7.)  Defendant Herron is a West Virginia resident who allegedly operates Union Group and Specialty Groups.  (*Id.* ¶¶ 8–9, 21, 29.)  Plaintiffs allege that Union Group is a signatory to the relevant Collective Bargaining Agreements, but Specialty Groups is not.  (*Id.* ¶¶ 15–24.)  Although Specialty Groups is not a signatory to the Agreements, Plaintiffs allege that it nonetheless should be bound by them because "Union Group and Specialty Groups constitute a single employer [and/or alter ego] under federal common law" such that Specialty Groups must make ERISA contributions required under the Agreements.  (ECF No. 1 ¶¶ 21–24); *see generally* (ECF No. 43; ECF No. 58).

On August 9, 2024, Specialty Groups filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 36) ("Specialty Groups' Motion to Dismiss"), asserting that this Court lacks jurisdiction to adjudicate Plaintiffs' claims against it because the Collective Bargaining Agreements at issue are ambiguous as to which entities or individuals fall within the "collective bargaining unit."  (ECF No. 36 at 10–17.)  Specialty Groups argued that such ambiguity raises a primarily representational issue within the primary jurisdiction of the

National Labor Relations Board ("NLRB").[1]  (*Id.*)  Relatedly, Specialty Groups asserted that deeming it an alter ego or single employer with Union Group would violate the rights of its employees—"non-union electricians and other non-union contracting personnel"—by binding them to collective bargaining agreements entered by Union Group without first determining that they are part of the single bargaining unit covered by the Collective Bargaining Agreements.  (*Id.* at 15, 13–16.)

This Court denied Specialty Groups' Motion to Dismiss by Memorandum Opinion and Order dated March 4, 2025.  (ECF No. 51 at 3, 20–25; ECF No. 52.)  This Court determined that Plaintiffs met their burden to prove by a preponderance of the evidence that the parties' dispute raises no primarily representational issues because (1) this case involves third-party beneficiaries' claims based on contracts between unions and employers; and (2) the Court need not reach whether Specialty Groups formed part of the bargaining unit defined within the Collective Bargaining Agreements because Plaintiffs' claims against Specialty Groups depend on whether Herron operated Specialty Groups and Union Group as a single employer or alter ego subject to the Collective Bargaining Agreement via its relationship with Union Group.  (ECF No. 51 at 23–24.)  In so holding, this Court relied on *Laborers' District Council Health and Welfare Trust Fund Number 2 v. Comet Contracting, LLC*, Civ. No. RWT-03-2196, 2006 WL 2085847 (D. Md. July 25, 2006) and cited two out-of-circuit cases, *Moriarty v.*

---

[1]  Pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169, as amended by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, the NLRB generally enjoys primary "jurisdiction over the area of labor management relations" and "representational issues, including identification of an appropriate collective-bargaining unit and certification of an exclusive bargaining agent . . . ."  *Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1251–52 (4th Cir. 1988) (citing 29 U.S.C. §§ 159, 160).

*Larry Lewis Funeral Directors*, 150 F.3d 773 (7th Cir. 1998) and *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465 (9th Cir. 1994).

On April 16, 2025, forty-three days after this Court issued its Memorandum Opinion and Order denying Specialty Groups' Motion to Dismiss, Specialty Group filed the instant untimely Motion for Reconsideration or Alternatively, to Certify Order for Interlocutory Appeal (ECF No. 55) ("Specialty Groups' Motion" or "Motion for Reconsideration"). Plaintiffs have responded in Opposition (ECF No. 58), and Specialty Groups has replied (ECF No. 61). By consent of all parties, this Court entered a stay of this case pending resolution of Specialty Groups' Motion. *See* (ECF No. 54). This matter is now ripe for review.

## STANDARD OF REVIEW

### I.    Motion for Reconsideration

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). As Judge Gallagher of this Court has noted, although "the Fourth Circuit has not clarified the precise standard applicable to motions for reconsideration, . . . courts in this District frequently look to the standards used to adjudicate Rule 59(e) and 60(b) motions for guidance when considering Rule 54(b) motions for reconsideration." *Jahn v. Tiffin Holdings Inc.*, Civ. No. SAG-18-1782, 2020 WL 4559927, at *1 (D. Md. May 13, 2020). Accordingly, motions for reconsideration might be granted "(1) to accommodate an intervening change in controlling

law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id.* (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)). Or, a motion might be granted "if one of the following is present: '(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief.'" *Jahn*, 2020 WL 4559927, at *2 (quoting *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018)).

Motions for reconsideration are "an extraordinary remedy which should be used sparingly." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009); *Peckey v. Bank of Am.*, Civ. No. RDB-14-433, 2016 WL 6951940, at *1 (D. Md. Nov. 28, 2016); *Siple v. First Franklin Fin. Corp.*, Civ. No. RDB-14-2841, 2015 WL 6163791, at *2 (D. Md. Oct. 19, 2015) ("Where a party seeks reconsideration on the basis of manifest error, the earlier decision cannot be 'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" (quoting *Franchot*, 572 F.3d at 194)). "Resolution of the motion is 'committed to the discretion of the district court[.]'" *Ficep Corp. v. Voortman USA Corp.*, Civ. No. WDQ-13-0429, 2015 WL 1401881, at *3 (D. Md. Mar. 24, 2015) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)).

## II.    Certification for Appeal

Section 1292(b) of Title 28 of the United States Code permits a United States District Court to certify an order for interlocutory appeal where that order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" (3) "and from which immediate appeal may advance the ultimate termination of the litigation."

*Smith v. Murphy*, 634 F. App'x 914, 915 (4th Cir. 2015) (internal quotations omitted).  "The decision to certify an interlocutory appeal is firmly in the district court's discretion." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015).

"Unless all of the statutory criteria are satisfied, however, 'the district court may not and should not certify its order...for an immediate appeal under [S]ection 1292(b).'" *Id.* (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)).  Courts "should grant this 'extraordinary remedy' only in 'exceptional circumstances' where early appellate review would avoid a 'protracted and expensive litigation' process." *Randolph v. ADT Sec. Servs., Inc.*, Civ. No. DKC 09–1790, 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012) (quoting *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, at *2 (4th Cir.1989) (unpublished opinion)).  Section 1292(b) "should be used sparingly and . . . its requirements must be strictly construed." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)).

## ANALYSIS

### I.    Motion for Reconsideration

As an initial matter, this is the *second* time that Specialty Groups has filed an untimely motion in this case.[2]  Under Local Rule 105.10, motions to reconsider "shall be filed with the Clerk not later than fourteen (14) days after entry of the order."  Loc. R. 105.10 (D. Md. 2025). Specialty Groups filed its Motion on April 16, 2025, forty-three (43) days after entry of this Court's Order (ECF No. 52) on March 4, 2025, and its Motion provides no explanation for

---

[2]  As the Court explained in its prior Memorandum Opinion, Specialty Groups filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) nearly six months after its Answer such that it was untimely but not waived under Federal Rule of Civil Procedure 12.  (ECF No. 51 at 21.)

its untimeliness.  As the U.S. Court of Appeals for the Fourth Circuit has explained, "[l]ocal rules are binding on the parties and the court that promulgated them." *Muhammad v. Flemming*, 29 F.4th 161, 166 n.6 (4th Cir. 2022) (citing *Maritrans Operating Partners Ltd. P'ship v. M/V Balsa 37*, 64 F.3d 150, 154–55 (4th Cir. 1995)); *accord Jackson v. Beard*, 828 F.2d 1077, 1078 (4th Cir. 1987).  For this reason, this Court has repeatedly denied motions for reconsideration where they are untimely filed in violation of the Local Rules.  *See, e.g.*, *Deitemyer v. Ryback*, Civ. No. ELH-18-2002, 2019 WL 4393073, at *2 (D. Md. Sept. 13, 2019) (collecting cases).

As Chief Judge Russell of this Court has explained, "under Local Rule 604 . . . , the Court may suspend the provisions of the Local Rules '[f]or good cause shown.'" *June v. Thomasson*, Civ. No. GLR-14-2450, 2017 WL 3642944, at *4 (D. Md. Aug. 24, 2017) (quoting Loc. R. 604 (D. Md. 2016)); *accord* Loc. R. 604 (D. Md. 2025).  Where a party shows a clear error of law, such good cause exists "because the ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Id.* (quoting *Harper v. Anchor Packing Co.*, Civ. Nos. GLR-12-460, GLR 12-462, 2014 WL 3828387, at *1 (D. Md. Aug. 1, 2014)).[3] (ECF No. 61 at 2–7.)  This Court has previously explained the extraordinarily high bar litigants face when seeking reconsideration based on clear error:

> "[M]ere disagreement" with a court's ruling is not enough to justify granting a motion for reconsideration. *Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013) (quoting *Sanders v. Prince George's Pub. Sch. Sys.*, Civ. No. RWT-08-0501, 2011 WL 4443441, at *1 (D. Md. Sept. 21, 2011)).  Rather, to justify granting a motion for reconsideration on the basis of clear error, "the prior

---

[3] In its Reply (ECF No. 61), Specialty Groups for the first time contends that good cause exists to consider its Motion in this case because it has identified clear error of law related to this Court's jurisdiction.  "[T]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).  As explained further below, even considering this untimely argument, Specialty Groups has failed to show clear error of law and thus has not shown good cause for its untimely motion.

judgment cannot be 'just maybe or probably wrong; it must ... strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Fontell v. Hassett*, 891 F.Supp.2d 739, 741 (D. Md. 2012) (alteration in original) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)). In other words, the Court's previous judgment must be "dead wrong." *Franchot*, 572 F.3d at 194 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). Further, a "'factually supported and legally justified' decision does not constitute clear error." *Lawley v. Northam*, Civ. No. ELH-10-1074, 2013 WL 4525288, at *1 (D. Md. Aug. 23, 2013) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081–82 (4th Cir. 1993)).

*Cincinnati Insurance Co. v. Fish*, Civ. No. RDB-19-3355, 2022 WL 1225419, at *2 (D. Md. Apr. 26, 2022) (quoting *Chae Bros., LLC v. Mayor & City Council of Balt.*, Civ. No. GLR-17-1657, 2019 WL 1040434, at *2 (D. Md. Mar. 5, 2019)).

In its Motion, Specialty Groups contends that the term "Bargaining Unit" is undefined in the Collective Bargaining Agreements such that its meaning is ambiguous and this matter raises a primarily representational issue within the primary jurisdiction of the National Labor Relations Board ("NLRB"). (ECF No. 55 at 3.) It argues that "the undefined term 'Bargaining Unit' may refer either exclusively to employees who are Union members or, alternatively, to any employee performing work within the geographical jurisdiction of the Union regardless of Union membership." (*Id.*) It asserts that while Union Group's employees are Union members by either proposed definition, Specialty Groups' employees would only be Union members if "Bargaining Unit" refers to performance of work in the geographical jurisdiction of the Union. (*Id.* at 5–6.) Specialty Groups further contends that enforcing the Bargaining Agreement against its employees without the NLRB's threshold determination of the appropriate "Bargaining Unit" raises potential violations of ERISA Sections 402, 404, and 515; West Virginia's Right-to-Work Laws; and preemption principles under *San Diego Building Trades*

*Council v. Garmon*, 359 U.S. 236 (1959).[4]  (ECF No. 55 at 5.)  As to ERISA, it contends that federal common law single employer or alter ego doctrines do not overcome ERISA Section 402, 29 U.S.C. § 1102; Section 404, *id.* § 1104; and Section 515, *id.* § 1145.  (ECF No. 55 at 7–8.)  It argues that some of the cases cited in this Court's Memorandum Opinion are "factually inapposite" or inapplicable because they did not involve bargaining agreements containing ambiguity as to the definition of the relevant bargaining unit.[5]  (ECF No. 55 at 8–9.)

In Opposition, Plaintiffs contend that Specialty Groups' Motion is untimely and fails to identify grounds for reconsideration.  *See* (ECF No. 58).  Plaintiffs argue that although Specialty Groups' general assertion that this matter raises primarily representational issues within the primary jurisdiction of the NLRB has remained consistent, Specialty Groups impermissibly raises new arguments that it could have raised previously.  (*Id.* at 12–18.)  First, Plaintiffs contend that Specialty Groups asserts a new basis for ambiguity—the Preservation of Work Clause within the Collective Bargaining Agreements—in the definition of "Bargaining Unit."  (*Id.* at 13 & n.6.)  Second, Plaintiffs argue that Specialty Groups newly asserts concerns that under ERISA Section 405, 29 U.S.C. § 1145, employers' contribution obligations are limited to "terms and conditions of" the relevant plan, such that adjudicating this case requires the NLRB to first resolve any ambiguity within the Collective Bargaining Agreements.  (ECF No. 58 at 14.)  Relatedly, Plaintiffs contend that Specialty Groups could have raised its arguments that (1) preemption principles preclude judicial consideration of this

---

[4]  Specialty Groups did not raise its new arguments regarding *Garmon* in its original briefing of jurisdiction. *Compare* (ECF No. 55 at 6) *with* (ECF No. 36).  Specialty Groups newly argues that *Garmon* precludes this Court from applying federal common law to bind non-union members to a collective bargaining agreement prior to the NLRB's threshold determination of the scope of an ambiguous Bargaining Unit.  (ECF No. 55 at 5–6.)
[5] Specialty Groups incorrectly contends that this Court relied on *Moriarity v. Svec*, 164 F.3d 323 (7th Cir. 1998), but *Svec* is not cited or referenced in the prior decision.

matter absent the NLRB's determination of the relevant bargaining unit, and (2) adjudicating this matter could violate West Virginia Right-to-Work Laws during its original briefing such that it should not be able to raise such arguments now. (*Id.* at 14–18.)

Specialty Groups' arguments for reconsideration rely on its assertions that (1) ambiguity within the Collective Bargaining Agreements requires determination of the appropriate "Bargaining Unit" before application of federal common law alter ego or single employer doctrines; (2) the NLRB has primary jurisdiction to determine the appropriate bargaining unit; and, therefore, (3) this Court lacks jurisdiction unless and until the NLRB defines the appropriate bargaining unit in this case. As explained further below, Specialty Groups fails to identify errors in the prior decision that "strike the [C]ourt as wrong with the force of a five-week-old, unrefrigerated dead fish." *Fontell*, 891 F.Supp.2d at 741 (quoting *Franchot*, 572 F.3d at 194). Thus, its Motion for Reconsideration must be denied as untimely.

### A. Interaction of ERISA, Section 301 of the Labor Management Relations Act, the National Labor Relations Act, and federal common law

This case implicates the interplay between federal common law and three federal statutes: ERISA, 29 U.S.C. § 1001 *et seq.*, which seeks to protect employee retirement funds to which employers contribute; the National Labor Relations Act ("NLRA"), 29 U.SC. §§ 151–169, which protects employees' right to unionize; and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, which amended the NLRA. Each of these statutes affects federal courts' jurisdiction of contractual disputes arising from collective bargaining agreements. *See, e.g.*, *Di Biase v. SPX Corp.*, 872 F.3d 224, 232–34 (4th Cir. 2017) (discussing jurisdiction under Section 301 of LMRA and ERISA); *Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1252 (4th Cir. 1988) (discussing jurisdiction under Section

301 of LMRA and NLRA).  Although the jurisdictional balance between the LMRA and

NLRA is well-established, few federal courts have evaluated jurisdiction of delinquent

contribution claims under ERISA in the context of collective bargaining agreements subject

to NLRA and LMRA.

Under LMRA Section 301, 29 U.S.C. § 185, federal courts have limited jurisdiction of

"[s]uits for violation of contracts between an employer and a labor organization representing

employees in an industry affecting commerce . . . ."  *Facetglas*, 845 F.2d at 1252 (quoting 29

U.S.C. § 185(a)).  Notwithstanding this jurisdictional grant, the National Labor Relations

Board ("NLRB") has primary jurisdiction of matters that fall under NLRA Sections 7 or 8.

*See Garmon*, 259 U.S. at 242–45.  As relevant to this case, NLRA Section 7 preserves workers'

right to choose their union representation.  29 U.S.C. § 157.  The Fourth Circuit has recognized

that the NLRB's "jurisdiction is . . . not exclusive over representational issues arising in a

breach of contract case[.]"  *Facetglas, Inc.*, 845 F.2d at 1252 (citing *Carey v. Westinghouse Elec.

Corp.*, 375 U.S. 261, 268 (1964)).  Nevertheless, it has reconciled the LMRA and NLRA by

holding "that jurisdiction under [S]ection 301 is precluded if the contractual dispute is

'primarily representational.'"  *Id.* (quoting *United Bhd. Of Carpenters v. W.T. Galliher & Bros.*, 787

F.2d 953, 954 (4th Cir. 1986)).  An issue is "primarily representational" where it requires the

court to "pass upon questions of representation and determination of appropriate bargaining

units[.]"  *Id.* (quoting *Local 3-193 Int'l Woodworkers v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1301

(9th Cir. 1980)).  Thus, even in civil actions raising contractual disputes under LMRA Section

301, the NLRB retains jurisdiction of "primarily representational issues," including

determinations of an appropriate bargaining unit as represented by a particular union.  *Id.* at

13

1252–53; *see also United Food & Commercial Workers Union v. Shoppers Food Warehouse Corp.*, 35 F.3d 958, 961 (4th Cir. 1994) (noting primarily representational disputes fall within jurisdiction of NLRB).

Under ERISA Sections 502 and 515, 29 U.S.C. §§ 1132, 1145, federal courts have jurisdiction of claims to enforce an employer's contractual obligations to pay contributions. Collective bargaining agreements subject to NLRA and LMRA frequently require employers to contribute to ERISA funds, thus creating potential contractual disputes at the intersection of ERISA, NLRA, and LMRA. Although some federal courts have construed ERISA Section 502 as an exception to the NLRB's primary jurisdiction, they often grapple with the relationship between federal jurisdiction of ERISA and LMRA claims and the NLRB's jurisdiction under NLRA of primarily representational matters. *See, e.g.*, *Central States, Se. and Sw. Areas Pension Fund v. Old Dutch Foods, Inc.*, 968 F. Supp. 1292, 1296–97 (N.D. Ill. 1997) (explaining relationship between ERISA, LMRA, and NLRA).

Although the Fourth Circuit does not yet appear to have addressed jurisdiction of ERISA claims in the context of the LMRA and NLRA, district courts within the Fourth Circuit have recognized that: "Just as the NLRA does not in all cases preempt suits brought pursuant to section 301 of the LMRA, the NLRA does not necessarily preempt all ERISA suits." *United Food & Commercial Workers v. Harris-Teeter Super Markets, Inc.*, 716 F. Supp. 1551, 1558 (W.D.N.C. 1989) (internal citation omitted); *see also Laborers' Dist. Council Health & Welfare Trust Fund v. Comet Contracting, LLC*, Civ. No. RWT-03-2196, 2006 WL 2085847, at *8 (D. Md. July 25, 2006) (finding jurisdiction to deem defendants single employer without determining bargaining unit and holding in the alternative that court had jurisdiction to determine the

appropriate bargaining unit).  Moreover, the Second, Fifth, and Tenth Circuits have recognized federal courts' jurisdiction of ERISA claims invoking LMRA Section 301 even where such claims may require bargaining unit determinations arguably within the concurrent jurisdiction of the NLRB.  *See Brown v. Sandimo Mats.*, 250 F.3d 120, 129–30 (2d Cir. 2001); *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 503–09, 511–17 (5th Cir. 1982) *cert. denied*, 464 U.S. 932 (1983); *Trs. of Colorado Statewide Iron Workers (ERECTOR) Joint Apprenticeship & Training Trust Fund v. A& P Steel, Inc.*, 812 F.2d 1518, 1521, 1526–27 (10th Cir. 1987).

Atop this statutory framework, the Supreme Court has long recognized that courts may apply federal common law to actions under LMRA Section 301.  *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457 (1957); *accord Harris-Teeter Super Markets, Inc.*, 716 F. Supp. at 1558; *Taylor v. Bakery & Confectionary Union*, 455 F. Supp. 816, 818 (E.D.N.C. 1978); *Int'l Union v. Covenant Coal Corp.*, 759 F. Supp. 1204, 1205–06 (W.D. Va. 1991) (collecting cases).  As relevant to Plaintiffs' claims against Specialty Groups, federal common law doctrines of alter ego or single employer status provide that non-signatories to a collective bargaining agreement may still be bound by such agreement in litigation under ERISA and LMRA Section 301.  *See, e.g.*, *Pratt-Farnsworth*, 690 F.2d at 503–09, 511–17 (holding federal court had jurisdiction to hear ERISA and § 301 claims against non-signatory employer alleged to be alter ego or single employer of signatory entity); *United Steelworkers of Am. v. Connors Steel Co.*, 855 F.2d 1499, 1505–08 (11th Cir. 1988) (discussing federal common law alter ego doctrine in context of ERISA claims).  With this framework in mind, the Court turns to Specialty Groups' contention that resolution of the action against it implicates its employees' representational rights under

the NLRA such that the NLRB has primary jurisdiction regardless of Plaintiffs' allegations that Herron operated Specialty Groups and Union Group as alter egos or single employers.

### B. Specialty Groups has not shown that this Court clearly erred by determining that Plaintiffs sufficiently alleged jurisdiction

As explained above and in this Court's prior Memorandum Opinion, the NLRB and federal courts generally have concurrent jurisdiction to hear ERISA disputes, but the NLRB enjoys primary jurisdiction over primarily representational disputes. *Facetglas, Inc.*, 845 F.2d at 1252. Although the Fourth Circuit does not yet appear to have addressed federal jurisdiction of claims by ERISA plans, funds, or trustees against non-signatory employers,[6] several of its sister circuits have recognized that representational issues—and specifically the determination of the relevant bargaining unit—either *are not implicated or fall within the court's jurisdiction* where a plaintiff alleges ERISA claims using alter ego or single employer doctrines. *See, e.g.*, *Brown v. Sandimo Mats.*, 250 F.3d 120, 129–30 (2d Cir. 2001) (declining to find that NLRB has primary jurisdiction of bargaining unit determination in alter ego cases and instructing "district court has jurisdiction over the question of whether the defendants' employees constitute an appropriate single bargaining unit"); *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 510–13, 517 (5th Cir. 1982) (holding plaintiffs sufficiently stated ERISA and § 301 claims under alter ego and single employer doctrines where neither party had initiated proceedings before NLRB); *Moriarty v. Larry Lewis Funeral Dirs.*, 150 F.3d 773, 776 (7th Cir. 1988) (holding bargaining unit determination not implicated in or relevant to ERISA claims

---

[6] Notably, however, in an LMRA Section 301 suit not involving ERISA, the Fourth Circuit has determined that a district court has jurisdiction to order arbitration under Section 301 even where the "dispute is arguably representational." *United Bhd. Of Carpenters & Joiners of Am. v. W.T. Galliher & Bros, Inc.*, 787 F.2d 953, 954–55 (4th Cir. 1986).

pled against non-signatory entity under single employer theories); *UA Loc. 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1470 (9th Cir. 1994) (holding ERISA claim based on alter ego doctrine was *not* within primary jurisdiction of NLRB (citing *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1276–77 (9th Cir. 1984))); *Trs. of Colorado Statewide Iron Workers (ERECTOR) Joint Apprenticeship & Training Trust Fund v. A&P Steel, Inc.*, 812 F.2d 1518, 1525–26, 1525 n.6 (10th Cir. 1987) (holding federal courts have jurisdiction to "resolve bargaining unit disputes that arise in the limited context of a genuine section 301 contract dispute, at least where a dispute containing a representational issue is not pending before the NLRB" and collecting cases on this issue); *Bd. of Trs., Container Mechs. Welfare/Pension Fund v. Universal Enters., Inc.*, 751 F.2d 1177, 1184 (11th Cir. 1985) (holding district court had jurisdiction to determine whether companies were alter egos such that defendant was bound by collective bargaining agreement and case fell outside NLRB's primary jurisdiction because no bargaining unit determination was required). For this reason, this Court has previously determined that it has jurisdiction of ERISA claims brought under alter ego or single employer theories regardless of whether such claims require bargaining unit determinations. *Comet Contracting*, 2006 WL 2085847, at *8. Applying these holdings to the instant Motion, Specialty Groups has not shown that this Court clearly erred by concluding that Plaintiffs established jurisdiction at this pleading stage by a preponderance of the evidence.[7]

Specialty Groups appears to contend that this case is distinct from other actions raising alter ego or single employer theories because (1) those actions did not reference ambiguity in

---

[7] Although Specialty Groups has filed its Answer (ECF No. 24), as noted *supra*, it subsequently filed an untimely 12(b)(1) motion (ECF No. 36). Therefore, consistent with Federal Rule of Civil Procedure 12, the Court previously evaluated jurisdiction as if at the pleading stage. *See* (ECF No. 51 at 22 n.18.)

the definition of "bargaining unit" such that application of alter ego or single employer doctrines did not risk violation of ERISA Section 515; and (2) those cases frequently involve circumstances in which the employees of the signatory entity and the alleged alter ego or single employer entity are identical such that no representational issues arise in applying the doctrines. *See* (ECF No. 55 at 5, 7–10; ECF No. 61 at 11–12). In its Reply, Specialty Groups clarifies that it "consistently has argued that the [Collective Bargaining Agreement], *as whole*, is ambiguous because it is unclear whether it obligates signatories to make contributions on behalf of employees who perform covered work irrespective of Union membership." (ECF No. 61 at 7.) Specifically, Specialty Groups contends that the Collective Bargaining Agreement (1) fails to define "Bargaining Unit;" and (2) uses "Bargaining Unit" "interchangeably when referring to Union membership and/or covered work." (*Id.*) According to Specialty Groups, therefore, this Court's prior Memorandum Opinion improperly fails to harmonize ERISA, LMRA, federal common law, and its employees' representational rights under West Virginia's Right-to-Work Laws. (ECF No. 55 at 7–10; ECF No. 61 at 11–12.) At the pleading stage, Plaintiffs need only allege facts sufficient to show by a preponderance of the evidence that this Court has jurisdiction. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). As explained below, Specialty Groups has not shown clear error in this Court's determination that, at this pleading stage, neither the purported representational concerns nor the purported ambiguity in the term "bargaining unit" implicate the NLRB's primary jurisdiction in this case.

First, Specialty Groups has not shown that it was clear error to determine that Plaintiffs have sufficiently alleged alter ego or single employer theories of liability such that no primarily

representational issues arise.  Federal courts have repeatedly recognized the frequent overlap between Section 301 cases and primarily representational cases within the primary jurisdiction of the NLRB.  *See United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. v. Valley Eng'rs*, 975 F.2d 611, 613–14 (9th Cir. 1992) (collecting cases).  Indeed, the Ninth Circuit has cautioned that courts must "note[] the difference between those [S]ection 301 cases which turn on . . . interpretation of the contract and those which, stripped to essentials, are representation cases."  *Id.* at 614.  The instant case involves Plaintiffs' allegation that Specialty Groups is not a signatory to the Collective Bargaining Agreement but should be obligated under Section 301 of LMRA and Sections 502 and 515 of ERISA to comply with audits and pay delinquent contributions because it operates as an alter ego or single employer with signatory Union Group.   Specialty Groups contends that this falls on the primarily representational side of the spectrum of § 301 cases because determining that it is a single employer or alter ego of Union Group would bind its non-unionized employees to collective bargaining agreements entered by Union Group.   Specialty Groups argues that such a determination necessarily implicates both a primarily representational matter within the NLRB's primary jurisdiction *and* its employees' rights under West Virginia Right-to-Work Laws.

Specialty Groups acknowledges that the Fourth Circuit has not addressed federal courts' jurisdiction in this context.  *See* (ECF No. 55 at 10 (suggesting district courts' ability "to bind a non-union shop to make contributions to a multiemployer pension plan" is an issue "of first impression")).  Nevertheless, in ERISA cases, "[c]ourts routinely exercise jurisdiction over claims by labor union funds seeking to impose liability on non-signatory entities through

either alter ego or single employer liability . . . without engaging in a 'bargaining unit' analysis." *Int'l Assoc. of Heat & Frost Insulators v. CEC Env't, Inc.*, 530 F. Supp. 3d 757, 761–62 (N.D. Ill. 2021) (alterations in original) (quoting *Laborers' Pension Fund v. GA Paving, LLC*, 2018 WL 3659338, at *5 (N.D. Ill. Aug. 2, 2018); *id.* (collecting cases); *accord Moriarty*, 150 F.3d at 776; *Universal Enters., Inc.*, 751 F.2d at 1184.  As this Court explained in its prior Memorandum Opinion, this case is similar to *Laborers' District Council Health and Welfare Trust Fund Number 2 v. Comet Contracting, LLC*, Civ. No. RWT-03-2196, 2006 WL 2085847 (D. Md. July 25, 2006), in which this Court concluded that a determination that a non-signatory, non-unionized entity was a single employer with a unionized entity that was signatory to a collective bargaining agreement allowed the Court to bind the non-signatory, non-unionized entity to the agreement without implicating representational issues within the primary jurisdiction of the NLRB.  *Id.* at *2–8.

Notably, *Comet Contracting* involved the Court's decision following a bench trial, whereas the dispute in this case arises at the pleading stage, where Plaintiffs need only prove jurisdiction by a preponderance of the evidence.  Although Specialty Groups now alleges that ambiguity within the definition of bargaining unit distinguishes this case from *Comet Contracting*, this Court's prior Memorandum Opinion determined that Plaintiffs have sufficiently alleged alter ego and single employer theories such that no bargaining unit determination is required to adjudicate their claim against Specialty Groups.  (ECF No. 55 at 24.)  Specifically, the Court explained that "Plaintiffs' claims against Specialty Groups are rooted solely in its status as a single employer or alter ego of Union Group, which is a contractual issue distinct from the determination of a bargaining unit."  (*Id.*)  Put differently, at the pleading stage, Plaintiffs have

sufficiently alleged alter ego and single employer status such that, as in the cases cited above, adjudication of their claims against Specialty Groups would not require the Court to analyze the asserted ambiguity in the definition of bargaining unit.

Second, even assuming, without deciding, that a bargaining unit determination is ultimately required in this case, this Court and at least the Second, Fifth, and Tenth Circuits have recognized that federal courts have jurisdiction of such analyses where no application has been made to the NLRB.  *See Comet Contracting*, 2006 WL 2085847, at *8 ("Even if a separate inquiry into the appropriate bargaining unit were necessary, this Court finds, as an alternative holding, that it has jurisdiction to make such a determination and that the relevant employees of Comet and USA constitute an appropriate bargaining unit."); *Brown*, 250 F.3d at 130 ("We agree, and find that the district court was not necessarily without jurisdiction to determine whether the defendants' employees constituted a single bargaining unit."); *Pratt-Farnsworth*, 690 F.3d at 519 ("To the extent that collateral labor law issues arise in the course of an ERISA claim, the federal courts should be empowered to decide them."); *A&P Steel*, 812 F.2d at 1526 ("We find that the representational issue before us attaches to a genuine section 301 contract dispute as a collateral issue and that the case is not 'so "primarily representational" as to preclude section 301 jurisdiction.'" (quoting *United Bhd. of Carpenters & Joiners of Am. v. W.T. Galliher Bros., Inc.*, 787 F.2d 953, 954 (4th Cir. 1986)).   Specialty Groups has not identified, and this Court is not aware, of any Fourth Circuit precedent addressing application of alter ego or single employer doctrines in the context of a purportedly ambiguous

Collective Bargaining Agreement giving rise to ERISA and Section 301 claims.[8]  The Fourth Circuit has recognized in a case not raising ERISA claims that "'Congress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units,' under the guise of interpreting the collective bargaining agreement."  *Facetglas, Inc.*, 845 F.2d at 1252 (quoting *Local Union 204 v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 418 (8th Cir. 1982)).  Absent precedent from the Fourth Circuit in the context of ERISA, which multiple federal courts of appeal have deemed significant to jurisdiction, this Court looks to the decisions of other federal courts of appeal for guidance.[9]

The most factually analogous case this Court can locate is *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489 (5th Cir. 1982), in which the Fifth Circuit reversed dismissal at the pleading stage of LMRA § 301 and ERISA claims alleged against a non-signatory entity under alter ego and single employer theories.  The Fifth Circuit held that where neither party has raised the bargaining unit issue to the NLRB, federal courts have jurisdiction of § 301 and ERISA claims brought against a non-signatory entity alleged to be an alter ego or single employer of a signatory entity.  *Id.* at 521, 526–27.  The instant case is procedurally and factually similar to *Pratt-Farnsworth*: both cases raise, at the pleading stage, issues of primary

---

[8]  Specialty Groups purports to cite Fourth Circuit authority for the proposition that "district courts may *not* apply the alter ego doctrine absent a finding that the employees of the non-signatory entities form a single *appropriate* bargaining unit."  (ECF No. 61 at 11 (citing *I.T.O. Corp. v. NLRB*, 818 F.2d 1108, 1111 (4th Cir. 1987).)  The case on which Specialty Groups relies for this assertion involved an appeal from the NLRB's preliminary decision and did not address (1) ERISA claims; (2) Section 301 claims; or (3) primary jurisdiction of the NLRB in cases raising contractual claims regarding a collective bargaining agreement subject to ERISA.  *See I.T.O. Corp. of Balt. v. NLRB*, 818 F.2d 1108 (4th Cir. 1987).

[9]  The type of claim is often determinative of jurisdictional issues arising in the context of LMRA § 301.  *See, e.g.*, *Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 897 (4th Cir. 1992) (collecting cases and discussing circuit split as to question of whether LMRA § 301 confers federal jurisdiction of "claims against non-signatories of a collective bargaining agreement for tortious interference with that agreement").

jurisdiction of claims under LMRA § 301 and ERISA Sections 502 against a non-signatory alleged to be an alter ego or single employer with a signatory entity.[10]  Several federal courts of appeal have followed *Pratt-Farnsworth* to conclude that courts retain jurisdiction of ERISA claims brought against non-signatory entities under alter ego or single employer theories.  *See Brown*, 250 F.3d at 129–30 (explicitly adopting *Pratt-Farnsworth* to exercise jurisdiction of § 301 and ERISA claims, including "jurisdiction to determine whether the defendants' employees constituted a single bargaining unit," against non-signatory entity alleged to be alter ego or single employer with signatory entity); *Nor-Cal Plumbing*, 48 F.3d at 1470–71 (concluding federal court has jurisdiction to hear ERISA claim against non-signatory entity under alter ego, but not single employer, theory); *see also A&P Steel*, 812 F.2d at 1525–26, 1525 n.6 ("elect[ing] to follow the reasoning of the Fifth Circuit in . . . *Pratt-Farnsworth* . . ." as to jurisdiction).  That is, at minimum the Fifth, Second, and Tenth Circuits have held that federal courts have jurisdiction in ERISA and LMRA cases to determine whether employees of related employers "constitute an appropriate single bargaining unit" under alter ego and single employer

---

[10]  Specialty Groups cites *Pratt-Farnsworth* to support the proposition that "district courts may *not* apply the alter ego doctrine absent a finding that the employees of the non-signatory and signatory entities form a single *appropriate* bargaining unit."  (ECF No. 61 at 11 (citing *Pratt-Farnsworth*, 690 F.2d at 508–10).)  The portion of *Pratt-Farnsworth* that Specialty Groups cites is not its holding but rather its background explanation of the history of alter ego doctrine and its summary of the district court's decision in the case below.  As explained both above and further below, *Pratt-Farnsworth* ultimately holds that, at least where no application has been made to the NLRB, district courts have jurisdiction over ERISA claims against non-signatory defendants alleged to be alter egos or single employers with signatory defendants.

Specifically, in *Pratt-Farnsworth*, the Fifth Circuit determined that it had jurisdiction over ERISA claims against the non-signatory defendant Halmar based on allegations that it was an alter ego or single employer with Farnsworth, which was a signatory to the relevant collective bargaining agreement.  690 F.2d at 503–04, 523–27.  The Fifth Circuit held that "a district court deciding a section 301 case may determine whether a bargaining unit is appropriate where a decision of that issue is essential to a resolution of a breach of contract claim," and dismissal of ERISA claims as to the non-signatory entity Halmar was premature.  *Id.* at 523, 523–27.  This posture is extremely similar to that before this Court.  Moreover, this Court has favorably cited *Pratt-Farnsworth* in at least one prior case to uphold its jurisdiction of ERISA claims brought under alter ego theories.  *See Comet Contracting*, 2006 WL 2085847, at *8.

doctrines. *See Brown*, 240 F.3d at 129–30 (citing *Pratt-Farnsworth*, 690 F.2d at 519); *A&P Steel*, 812 F.2d at 1525–26. The Seventh, Ninth, and Eleventh Circuits have recognized jurisdiction of ERISA and LMRA cases in some capacity, although not as broadly as the Second, Fifth, and Tenth Circuits. *Compare Brown*, 240 F.3d at 129–30 (citing *Pratt-Farnsworth*, 690 F.2d at 519) (explicitly finding jurisdiction to determine appropriate bargaining unit); *accord A&P Steel*, 812 F.2d at 1526; *with Moriarty*, 150 F.3d at 776 (determining no bargaining unit determination implicated in case alleging claims under single employer theory); *Nor-Cal Plumbing*, 48 F.3d at 1470 (determining court retains jurisdiction to reach claims alleged under alter ego but not single employer theory); *and Universal Enters., Inc.*, 751 F.2d at 1184 (holding court has jurisdiction of claims allege under alter ego theories where such claims do not require bargaining unit determination). Similarly, as this Court has already noted, this Court and others within the Fourth Circuit have recognized their jurisdiction to reach ERISA and § 301 claims under alter ego theories even if such claims require a bargaining unit determination. *See Comet*, 2006 WL 2085847 at *1, 7; *Covenant Coal Corp.*, 759 F. Supp. at 1208–09.

Although Specialty Groups notes that at least one out-of-circuit district court has recognized that alter ego or single employer cases involving a signatory, unionized employer and a non-signatory employer may raise representational concerns, this is not sufficient to establish clear error justifying an untimely motion for reconsideration. *See* (ECF No. 61 at 12). The Southern District of New York, for example, held in *Local 812 v. Canada Dry Bottling Co.*, 1999 WL 301692 (S.D.N.Y. May 13, 1999), that a dispute alleging a non-signatory entity whose employees belonged to a different union than the signatory entity was liable for ERISA claims under alter ego theory raised a primarily representational issue within the primary

jurisdiction of the NLRB.[11]  *Id.* at *6.  Specifically, the Southern District of New York held that determining that the non-signatory and signatory defendants were alter egos would bind the non-signatory defendant's employees to the collective bargaining agreement signed by the signatory entity, thereby violating those employees' representation rights.  *Id.*  This unpublished decision predates the Second Circuit's holding in *Brown v. Sandimo Materials*, 250 F.3d 120 (2d Cir. 2001), that "the district court was not necessarily without jurisdiction to determine whether the defendants' employees constituted a single bargaining unit" under an alter ego theory where only one defendant was signatory to a collective bargaining agreement. *Id.* at 130, 127–30.

As this Court explained in its prior Memorandum Opinion, at this pleading stage, Plaintiffs have sufficiently alleged an alter ego or single employer theory such that they have stated a claim *that, at the pleading stage, does not implicate a determination of the relevant bargaining unit*. Moreover, as the above cases demonstrate, even if the inquiry *did* implicate determination of the bargaining unit, Specialty Groups has not shown that it was clear error to determine at the pleading stage that this Court has jurisdiction.[12]  *See, e.g.*, *Pratt-Farnsworth*, 690 F.2d at 519; *Brown*, 250 F.3d at 129–30; *A&P Steel, Inc.*, 812 F.2d at 1525–26.  Although Specialty Groups

---

[11]  According to Specialty Groups, unlike the separately unionized employees of the non-signatory defendant in *Canada Dry Bottling Company*, Specialty Groups' employees are not unionized at all.  (ECF No. 36 at 15.)  As many courts have recognized, alter ego theory may apply to "double breasted operations" "in which the employer is closely affiliated with a non-union 'open shop' which performs the same or similar work and thus permits those in control of the affiliated entities to serve both the union and non-union markets."  *Mass. Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc.*, 343 F.3d 18, 22 (1st Cir. 2003) (collecting cases discussing application of alter ego doctrine to "double breasted operations"); *see also Nor-Cal Plumbing*, 48 F.3d at 1470 (discussing jurisdiction in alter ego claims against double breasted operations).

[12]  This Court reaches no conclusion on this point because its prior decision held that it had jurisdiction because, as alleged, Plaintiffs' claims do not require a bargaining unit determination.  Rather, the Court notes such caselaw to demonstrate that Specialty Groups' argument of clear error based on its assertion that the claims *do* require a bargaining unit determination is not sufficient to establish clear error as required for reconsideration.

has demonstrated its disagreement with this Court's prior Memorandum Opinion, "[m]ere disagreement does not support" reconsideration. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). Accordingly, because Specialty Groups has not shown clear error, its Motion for Reconsideration is DENIED as untimely.[13]

## II.    Motion for Certification of Appeal

As an alternative to reconsideration, Specialty Groups seeks certification for interlocutory appeal of "[w]hether ERISA §§ 402, 414, and 515; [West Virginia Code] §§ 21-1A-3 and 21-5G-2 (collectively, 'West Virginia's Right-to-Work Laws'); and *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) preclude district courts from applying federal common law to bind a non-union shop to an ambiguous collective bargaining agreement ('CBA')?"[14] As noted above, 28 U.S.C. § 1292(b) authorizes district courts to certify an order for interlocutory appeal where the court believes the order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" (3) "and from which immediate appeal may advance the ultimate termination of the litigation." *Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 771 (D. Md. 2016) (quoting *Smith v. Murphy*, 634 F. App'x 914, 915 (4th Cir. 2015)). "Unless all of the statutory criteria are satisfied . . . 'the district court may not and should not certify its order . . . for an immediate

---

[13] As noted above, Specialty Groups' Motion for Reconsideration is denied as untimely because this Court is bound by Local Rule 105.10 (D. Md. 2025). *See Muhammad v. Flemming*, 29 F.4th 161, 166 n.6 (4th Cir. 2022) (citing *Maritrans Operating Partners Ltd. P'ship v. M/V Balsa 37*, 64 F.3d 150, 154–55 (4th Cir. 1995)). At a practical level, because Specialty Groups arguably seeks relief under the exception for untimeliness where a party identifies clear error of law, denial of Specialty Groups' Motion as untimely reflects that Specialty Groups has not identified a clear error of law.

[14] Although Specialty Groups does not expressly frame its proposed question for certification for interlocutory appeal as a jurisdictional issue, the relevant Memorandum Opinion (ECF No. 51) and Order (ECF No. 52) determined that Plaintiffs had sufficiently alleged jurisdiction. Accordingly, the Court evaluates the proposed question for interlocutory appeal as a jurisdictional question.

appeal under [S]ection 1292(b)." *Id.* at 772 (quoting *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015)).  As a preliminary matter, the Supreme Court has explained that "[a]s the text of § 292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and it is not tied to the particular question formulated by the district court." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).  That is, to the extent Specialty Groups seeks certification for interlocutory appeal, that certification applies as to this Court's prior Memorandum Opinion and Order concluding that Plaintiffs have sufficiently alleged jurisdiction at this stage.[15]  For the reasons set forth below, Specialty Groups has not met its burden to satisfy the requirements for interlocutory appeal.

In this case, Specialty Groups has not demonstrated a "substantial ground" for difference of opinion as to this Court's jurisdiction.  The "legislative history of 28 U.S.C. § 1292(b) indicates that the statutory prerequisite of 'substantial ground for difference of opinion' is satisfied only when there is 'substantial doubt' that the district court's order was correct." *See Kennedy v. Villa St. Catherine, Inc.*, Civ. No. PWG-09-3021, 2010 WL 9009364, at *2 (D. Md. June 16, 2010) (internal quotations omitted).  This Court has previously noted that "[t]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F.Supp.2d 612, 624 (D. Md. 2013).  However, "when a matter of first

---

[15]  Moreover, even if this Court could specifically certify a question for interlocutory appeal under § 1292(b), it is not at all clear that the relevant Memorandum Opinion and Order involve any ruling on Specialty Group's proposed question of law.  Specialty Groups did not raise any arguments regarding *Garmon* preemption when briefing its original Motion, and the Court's Memorandum Opinion and Order thus did not rely on *Garmon*.  Relatedly, Specialty Groups' original Motion referenced West Virginia right-to-work laws only once, and it cited laws different than those cited in its proposed question for certification.  *Compare* (ECF No. 36 at 16 n.8 (citing W. Va. Code §§ 21-5G-1 to 21-5G-7)) *with* (ECF No. 55 at 2 (citing W. Va. Code §§ 21-1A-3 and 21-5G-2)).

impression also had other grounds for difference of opinion . . . , district courts in this circuit have certified the issue for interlocutory appeal." *Kennedy*, 2010 WL 9009364 at *2. "An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Randolph v. ADT Sec. Servs., Inc.*, Civ. No. DKC 09–1790, 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012). "In other words, for interlocutory appeals, 'it matters not whether the lower court simply got the law wrong,' but 'whether courts themselves disagree as to what the law is.'" *In re Nichols*, Civ. No. TDC–14–0625, 2014 WL 4094340, at *3 (D. Md. Aug. 15, 2014) (quoting *KPMG Peat Marwick, LLP v. Est. of Nelco, Ltd.*, 250 B.R. 74, 83 (E.D. Va. 2000)).

As discussed above, federal courts broadly agree that they have jurisdiction of claims for delinquent contributions brought under ERISA and LMRA § 301 against a non-signatory to a collective bargaining agreement based on federal common law alter ego or single employer theories. *See Pratt-Farnsworth*, 690 F.2d at 519; *Brown*, 250 F.3d at 129–30; *A&P Steel, Inc.*, 812 F.2d at 1525–26, 1525 n.6. Relatedly, federal courts have repeatedly determined that *Garmon* does not apply to suits for breach of collective bargaining agreements under Section 301, including suits raising claims for delinquent contributions under ERISA. *See, e.g., Richardson v. Kruchko & Fries*, 966 F.2d 153, 155–56 (4th Cir. 1992) (discussing *Garmon* as a doctrine preempting claims under state law); *Union No. 171 v. Blue Ridge Transfer Co., Inc.*, 952 F.2d 395, at *2 (4th Cir. Dec. 19, 1991) (unpublished) ("However, the Supreme Court has repeatedly held that federal jurisdiction over suits for breach of collective bargaining agreements under Section 301 is *not* preempted by *Garmon*."); *Windfield v. Groen Div., Dover Corp.*, 890 F.2d 764, 766–67 (5th Cir. 1989) (describing *Garmon* as speaking "on the issue of preemption of state

law claims by the NLRA"); *Operating Engineers' Local 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co., Inc.*, 43 F.4th 617, 621–23 (6th Cir. 2022) (explaining federal courts have jurisdiction to hear contractual claims under ERISA "[a]s long as a plaintiff asserts an ERISA cause of action—and doesn't ask a federal district court to find an employer violated the NLRA"); *Lupiani v. Wal-Mart Stores, Inc.*, 435 F.3d 842, 845–47 (8th Cir. 2006) (explaining *Garmon* preemption is not at issue where ERISA and NLRA are not in conflict); *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 754–55, 756–57, 757 n.8 (9th Cir. 1997) (declining to apply *Garmon* preemption "to cover cases involving the overlap of two federal statutes" and distinguishing limited cases in which *Garmon* may apply); *Universal Enters.*, 751 F.2d at 1183–84 (holding *Garmon* does not apply to Section 301 claims raising alter ego theories "even though a breach may also constitute an unfair labor practice").

Although it does not appear that any courts have considered the application of such doctrines in cases raising ERISA, LMRA Section 301, *and* the West Virginia Right to Work Laws cited by Specialty Groups, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Lynn*, 953 F.Supp.2d at 624 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). Indeed, as Judge Hollander of this Court has explained, "lack of unanimity among courts and lack of relevant authority do not suffice" to establish substantial grounds for difference of opinion. *Ekstrom v. Congressional Bank*, Civ. No. ELH-20-1501, 2021 WL 119000, at *3 (D. Md. Jan. 13, 2021) (collecting cases). Specialty Groups identifies no cases in which courts have considered, let alone disagreed about, the applicability of federal common law in cases potentially implicating ERISA, LMRA Section 301, and the cited West Virginia Right to

Work Laws.  *See* (ECF No. 55 at 10–11 (noting question presents an issue of first impression without identifying any cases in which courts have disagreed as to the question).  Specifically, Specialty Groups has not identified a circuit split or disagreement within the Fourth Circuit. *Id.* at 11 (stating "the controlling question of law, on its face, is unclear, difficult, novel, and of first impression, and raises issues over which district courts may differ" but failing to identify cases in which district courts have differed).  Relatedly, for the same reasons discussed above as to reconsideration, Specialty Groups has not established "'substantial doubt' that the district court's order was correct."  *Kennedy*, 2010 WL 9009364, at *2 (quoting *Moll v. U.S. Life Title Ins. Co.*, 1986 WL 10026, at *3 (S.D.N.Y. Apr. 21, 1987)).  Accordingly, Specialty Groups has not met its burden to establish "that the prospective appeal satisfies each of the statutory prerequisites for certification," and its alternative request for interlocutory appeal is DENIED. *Ekstrom*, 2021 WL 119000, at *2 (quoting *Boyd v. Coventry Health Care, Inc.*, 828 F. Supp. 2d 809, 820 (D. Md. 2011)).

## CONCLUSION

For the foregoing reasons, Specialty Groups' Motion for Reconsideration (ECF No. 55) is DENIED, and the stay in this case is LIFTED.  The parties shall file a Proposed Scheduling Order within fourteen (14) days of the date of this Memorandum Opinion and Order.

/s/ _____
Richard D. Bennett
United States Senior District Judge

Dated: October 21, 2025